FILED

2011 Sep-02  AM 10:11
U.S. DISTRICT COURT
N.D. OF ALABAMA



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| GLENN ALLAN SUDDUTH, | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| vs. | ] | 5:10-CV-00740-LSC |
| | ] | |
| MICHAEL J. ASTRUE, | ] | |
| Commissioner, | ] | |
| Social Security Administration, | ] | |
| | ] | |
| Defendant. | ] | |

MEMORANDUM OF OPINION

I.     Introduction.

The plaintiff, Glenn Allan Sudduth ("Plaintiff"), appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Supplemental Security Income ("SSI").   Mr. Sudduth timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Mr. Sudduth was thirty-seven years old at the time of the Administrative Law Judge's ("ALJ's") decision, and he has an eleventh grade

education, a general equivalency diploma, and a trade school certification in auto mechanics and air condition refrigeration.  (Tr. at 28.)  His past work experiences include employment as a short order cook, a newspaper carrier, a sander, a carpenter, a pole inspector, an automobile mechanic, a concrete finisher and a furniture delivery person.  (Tr. at 47.)  Mr. Sudduth claims that he became disabled on July 31, 2007, due to degenerative disk disease, spinal injuries, depression, and anxiety.  (Tr. at 108.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process.  *See* 20 C.F.R. § 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  The first step requires a determination of whether the claimant is "doing substantial gainful activity."  20 C.F.R. § 416.920(a)(4)(i).  If he or she is, the claimant is not disabled and the evaluation stops.  *Id*.  If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined.  20 C.F.R. § 416.920(a)(4)(ii).  These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled.  *Id*.  The decision depends on the medical evidence in the record.  *See Hart v. Finch*, 440 F.2d 1340, 1341

(5th Cir. 1971).  If the claimant's impairments are not severe, the analysis stops.  20 C.F.R. § 416.920(a)(4)(ii).  Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. § 416.920(a)(4)(iii).  If the claimant's impairments fall within this category, he or she will be found disabled without further consideration.  *Id.*  If they do not, a determination on the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step.  20 C.F.R. § 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work.  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops.  *Id.*  If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step.  *Id.*  Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work.  20 C.F.R. § 416.920(a)(4)(v).  If the claimant can do other work, the claimant is not disabled.  *Id.*

Applying the sequential evaluation process, the ALJ found that Mr. Sudduth has not been under a disability within the meaning of the Social Security Act since September 4, 2007.  (Tr. at 8.)  He further determined that Mr. Sudduth has not engaged in substantial gainful activity since the alleged onset of his disability.  (Tr. at 10.)  According to the ALJ, Plaintiff's degenerative disk disease, depression, and anxiety are "severe" based on the requirements set forth in the regulations.  (Tr. at 13.)  However, he found that these impairments neither meet nor medically equal any of the listed impairments in Appendix 1, Subpart P, Regulations No. 4.  (*Id*.)  The ALJ did not find Mr. Sudduth's allegations to be totally credible, and he determined that he has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b), subject to the following limitations:

> The claimant can occasionally lift and carry up to 20 pounds and frequently lift and carry up to 10 pounds. The claimant would need a sit/stand type of job where he can stand for 15 minutes, sit for 15 minutes, and walk for 5 minutes. Claimant can occasionally balance, stoop, kneel, crouch and climb ramps and stairs. Claimant can never crawl or work on ladders, ropes, or scaffolds. Claimant would be best suited in positions that required minimal verbal abilities and casual instructions. Claimant may have difficulty with jobs requiring spelling and writing, and he can perform jobs where there is simple arithmetic.

(Tr. at 13.)

According to the ALJ, Mr. Sudduth is unable to perform any of his past relevant work, he is a "younger individual," and he has "at least a high school education and is able to communicate in English," as those terms are defined by the regulations. (Tr. at 17.) He determined that Plaintiff has "no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case." (*Id.*) The ALJ found that Mr. Sudduth has the residual functional capacity to perform light, unskilled work, but, because this base was eroded by additional limitations, the ALJ consulted a vocational expert to determine "whether jobs exist in the national economy for an individual with the claimant's age, education, work experience and residual functional capacity." (Tr. at 18.) The vocational expert testified that Mr. Sudduth would be able to perform the requirements of representative occupations,  such as inspector, assembler, and machine operator, and that there were 2,000, 5,000, and 800 state jobs and 60,000, 200,000, and 45,000 national jobs, respectively, available in these categories. (*Id.*)

The ALJ concluded his findings by stating that Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy," and he "has not been under a 'disability,' as defined in the Social Security Act, since September 4, 2007, the date the application was filed."  (*Id.*)

II.    Standard of Review.

The Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions.  *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.  *Id.*  "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent

conclusions from the evidence does not prevent an administrative agency's

finding from being supported by substantial evidence.'" *Parker v. Bowen*,

793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo*

*v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if this Court

finds that the evidence preponderates against the Commissioner's decision,

the Court must affirm if the decision is supported by substantial evidence.

*Miles*, 84 F.3d at 1400.  No decision is automatic, however, for "despite this

deferential standard [for review of claims] it is imperative that the Court

scrutinize the record in its entirety to determine the reasonableness of the

decision reached."  *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987).

Moreover, failure to apply the correct legal standards is grounds for reversal.

*See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.    Discussion.

        Mr. Sudduth alleges that the ALJ's decision should be reversed and

remanded for two reasons.  First, he believes that the ALJ's credibility

determination regarding his subjective complaints of disabling pain is not

supported by substantial evidence as required by 42  U.S.C. § 423(d)(5)(A).

(Doc. 8 at 11.)  Second, Plaintiff contends that the ALJ failed to pose a full and complete hypothetical to the vocational expert (*Id*. at 13.)

A.    Subjective Pain Testimony.

Plaintiff argues that the ALJ's credibility determination is not supported by substantial evidence. Specifically, he argues that the ALJ was incorrect in his finding that the medical evidence did not support the extent of the limitations on daily activities described by the Plaintiff.

To establish disability based upon pain and other subjective symptoms, "[t]he pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)).

The ALJ is permitted to discredit Claimant's subjective testimony of pain and other symptoms if he articulates explicit and adequate reasons for doing so. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also*

Soc. Sec. Rul. 96-7p, 1996 WL 374186 (1996) ("[T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements.").  Although the Eleventh Circuit does not require explicit findings as to credibility, "'the implication must be obvious to the reviewing court.'" *Dyer*, 395 F.3d at 1210 (quoting *Foote*, 67 F.3d at 1562).  In *Dyer*, the Eleventh Circuit held that the ALJ properly applied the *Holt* standard when he considered the claimant's daily activities, frequency of his symptoms, and the types and dosages of his medications, to conclude that the claimant's subjective complaints were inconsistent with the medical record.  *Id.* at 1212.  "[P]articular phrases or formulations" do not have to be cited in an ALJ's credibility determination, but it cannot be a "broad rejection which is "not enough to enable [this Court] to conclude that [the ALJ] considered her medical condition as a whole."  *Id.* (internal quotations omitted).

In this case, the ALJ found that the Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. at 14.)  However, the ALJ also found that the Plaintiff's "statements

concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment." (*Id*.)  In making his decision, the ALJ considered the Plaintiff's objective medical history for his degenerative disk disease, as well as the Plaintiff's testimony regarding his neck and back pain.

In March of 2007, an X-ray of the Plaintiff's cervical spine was performed which revealed C5-6 degenerative disk disease. (Tr. at 15.)  An MRI of the cervical spine on September 17, 2007, showed mild to moderate[1] degenerative changes at C4-5 and C6-7, and "left foraminal stenosis and right foraminal narrowing" at C5-6. (Tr. at 211.) A subsequent evaluation of the Plaintiff by Dr. Jeffrey Harris, M.D., indicated that the Plaintiff's motor strength was "pain limited and 5/5 in his legs and 4+/5 in his arms." (Tr. at 210.)  A later MRI on December 16, 2009 again showed degenerative changes that ranged from "very mild" to "moderate." (Tr. at 228.)  The Radiology Report revealed "a small canal on a congenital basis" and "degenerative

---

[1]The Plaintiff takes issue with the use of the terms "mild" and "moderate" to describe the Plaintiff's spinal problems in the Commissioner's Memorandum in Support of the Commissioner's Decision. (Doc. 10 at 11.) However, the terms "mild" and "moderate" come from the language in the medical records, not from the Commissioner's interpretation of those records.

changes in the mid to lower cervical spine without evidence of acute abnormality." (*Id.*) The ALJ considered these records when making his credibility determination. (Tr. at 15.)

The Plaintiff's medical records indicate that he began receiving treatment for his degenerative disk disease in 2007. The Plaintiff's treating physician, Dr. Harris, saw the Plaintiff eight times between September 2007 and June 2009. (Tr. at 212-14, 226-31.)  Dr. Harris consistently treated the Plaintiff's symptoms with a combination of Cymbalta, Lortab, and Lyrica, and at times also prescribed Lunesta and Fexmid. *Id.*  The ALJ considered these records in making his credibility determination, and cited several instances when the Plaintiff advised Dr. Harris that medication had reduced his pain or relieved his symptoms. (Tr. at 15.)  The ALJ found that the Plaintiff's pain due to his degenerative disk disease was successfully controlled by medication.[2] (*Id.*)  This does not mean that the ALJ ignored

---

[2]In his Plaintiff's Reply Memorandum, the Plaintiff argues that the Commissioner's finding that the Plaintiff's pain was controlled by medication, "[implies] . . . that the Plaintiff should have undergone more invasive or aggressive medical treatment for his neck and back impairments" (Doc. 9 at 15), and that it is improper for the ALJ to consider that more aggressive medical treatment was not utilized by the treating physicians. However, the ALJ may consider "[t]reatment, other than medication [claimant] receive[s] or ha[s] received for relief of [his] pain or other symptoms." 20 CFR

Plaintiff's evidence of subjective pain, but rather that he did not find the degree of pain alleged to be credible. *See Arnold v. Heckler*, 732 F.2d 881, 884 (11th Cir. 1984) ("It was not inconsistent for the [ALJ] to find that [the plaintiff] suffers pain in fact and yet is not so severely impaired as to meet the stringent test for disability imposed by the Act.").

The ALJ also looked at the Plaintiff's testimony as to his daily activities to determine the Plaintiff's credibility.  While the ALJ cannot use daily activities alone to ascertain whether a claimant is disabled, the ALJ must consider the entire record, including a claimant's activities, to make a finding on credibility.  20 CFR § 416.929(c)(3) ("Factors relevant to your symptoms, such as pain, which we will consider include: (i) Your daily activities . . . ."); *see also Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997) (finding that "participation in everyday activities, such as housework or fishing" does not alone disqualify one from disability).  The ALJ noted that though the Plaintiff testified at the hearing that he had to elevate his legs

_____

§ 416.929(c)(3)(v). The ALJ properly considered the fact that the record does not show the Plaintiff's treating physician suggested or recommended  any treatment other than medication to control the Plaintiff's pain at any time during his treatment of the Plaintiff.

for a majority of the day, the Plaintiff did not mention this limitation to Dr. Lloyd when he met with her for an interview and psychological testing, despite the fact that he did mention to her his constant neck and back pain that varied in severity. (Tr. at 12, 15.)  The ALJ also considered the fact that the Plaintiff drove himself to his meeting with Dr. Lloyd and indicated to her that his hobbies included playing with his children. (*Id*.) The ALJ found that these activities are inconsistent with someone who must lie down and keep his feet elevated for about four hours at a time. (Tr. at 15.)

Finally, the ALJ looked to Plaintiff's previous work experience to determine credibility. Information from a prior work record may be used to evaluate symptoms, including pain. 20 C.F.R. § 416.929(c)(3). The ALJ noted that the claimant's work history was irregular and inconsistent, which indicated to the ALJ that the Plaintiff did not have a strong motivation for regular employment, even prior to his alleged disability date. (Tr. at 17.) Further, in assessing the credibility of Plaintiff's testimony, the ALJ observed that in the past, the Plaintiff has failed to file tax returns on income that was "paid under the table." (*Id*.)  While this did not factor into the ALJ's

determination of the Plaintiff's subjective complaints of pain, it was considered by the ALJ as an indication of the Plaintiff's overall credibility.

The ALJ specifically addressed the Plaintiff's allegations of pain in his opinion, and he provided explicit and reasonable reasons for rejecting his testimony.[3]  The objective medical and other evidence supports the ALJ's conclusion that Plaintiff's condition did not cause disabling limitations and instead shows that he could perform light, unskilled work.  (Tr. at 18.)

B.    Hypothetical Question to the Vocational Expert.

Plaintiff next argues that the ALJ failed to pose a full and complete hypothetical to the vocational expert.  Plaintiff contends that the ALJ's hypothetical questions were erroneous and incomplete because they did not "include any limitations based on pain and no limitations based on the

---

[3]The Secretary states in his Memorandum in Support of the Commissioner's Decision that two of the factors used by the ALJ to determine the Plaintiff's credibility do not appear to be supported by substantial evidence. (Doc. 9 at 15.) In his Plaintiff's Reply Memorandum, the Plaintiff points to this statement by the Commissioner and claims that "the agreement by the Commissioner that the decision of the ALJ was not supported by substantial evidence would require that this matter be reversed and remanded." (Doc. 10 at 3.) However, this argument fails to take into account the fact that the ALJ had multiple other well-supported findings to discredit the Plaintiff's subjective complaints of pain. As the Secretary points out, "Remand to have the ALJ amend his discussion of these two factors would serve no practical purpose, would not alter the ALJ's findings, and would be a waste of judicial and administrative resources."(Doc. 9 at 18 (*citing Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981)).)

numbness and restricted use of his hands as a result of the degenerative disc disease and osteoarthritis." (Doc. 8 at 13.)

In satisfying the fifth step of the sequential process, "[t]he ALJ must articulate specific jobs that the claimant is able to perform, and this finding must be supported by substantial evidence, not mere intuition or conjecture." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002) (referencing *Allen v. Sullivan*, 880 F.2d 1200, 1201) (11th Cir. 1989)). In so doing, "the ALJ may use Medical-Vocational Guidelines as a framework to evaluate vocational factors, but must also introduce independent evidence, preferably through a vocational expert's testimony, of [the] existence of jobs in the national economy that the claimant can perform." *Id.* (citing *Wolfe v. Chater*, 86 F.3d 1072, 1077-78 (11th Cir. 1996)). To satisfy the substantial evidence standard, "the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999). However, an ALJ need only include a claimant's credible limitations. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004). If the Commissioner demonstrates that there is work available in significant numbers in the national economy that the claimant

can perform, "the claimant must prove she is unable to perform those jobs in order to be found disabled." *Id*. at 1228.

Plaintiff first argues that the ALJ's hypothetical question did not include any limitations based on pain.  While the ALJ did not specifically reference pain in his hypothetical question, the hypothetical did take Mr. Sudduth's pain into consideration.  The hypothetical questions excluded or limited squatting, kneeling, ladder climbing, crawling, walking, standing, and climbing stairs, and the ALJ provided that Plaintiff would need to stand for 15 minutes, sit for 15 minutes, and walk for five minutes. (Tr. at 49.) The vocational expert testified that based on the physical and neuropsychological limitations outlined in the ALJ's hypotheticals, there would be sufficient jobs in the national economy for Mr. Sudduth. (Tr. at 50-52.)

Plaintiff argues that the vocational expert testified that "if the Plaintiff's pain testimony were accepted as true that there would be no work the Plaintiff could perform." (*Id*.)   This argument is based upon the vocational expert's response to a hypothetical posed by counsel for the Plaintiff, who asked whether there were any jobs available for someone who

is "suffering from severe pain two to three hours at a time three to four times a day such that it would require that person to remove them self from the work place . . . ." (Tr. at 54.)  The Eleventh Circuit has held that the Commissioner can disregard responses to hypotheticals not supported by the record.  *Graham v. Bowen*, 790 F.2d 1572, 1576 (11th Cir. 1986).  An ALJ may also omit hypothetical questions which are not supported by medical records or are alleviated by medication.  *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1270 (11th Cir. 2007).  The ALJ was not required to include the Plaintiff's pain testimony in his hypothetical because he did not find the Plaintiff's subjective complaints of pain to be credible. Therefore, the ALJ properly disregarded the vocational expert's response to the hypothetical posed by counsel for the Plaintiff.

Plaintiff next argues that the ALJ erred by not including any limitations based on numbness and the restricted use of his hands due to his degenerative disk disease and osteoarthritis.  In Plaintiff's Brief, he argues that the vocational expert testified "that if the testimony as to his neck problems and difficulty with arm use were accepted as true . . . the Plaintiff could not perform any of the jobs relied upon by the ALJ." (Doc. 17.) This

interpretation of the vocational expert's opinion is incorrect. At the hearing,

counsel for the Plaintiff asked, "With respect to if you had an individual that

because of the numbness in their hands would be unable to do fine

manipulation, would it affect his ability to perform any of these jobs that

you list here?" (Tr. at 53.)  The vocational expert responded, "Yes, it would

because they all require at least frequent reaching and handling and some

require constant reaching and handling . . . And fingering as well." (*Id.*)

Again, the ALJ was not required to include the Plaintiff's complaints of

numbness in his hands in the hypothetical posed to the vocational expert

because he did not find these assertions to be credible.[4]  Further, the ALJ

must ask about claimant's impairments, but he need not ask about every

symptom.  *Ingram*, 496 F.3d 1253, 1270 (11th Cir. 2007). The ALJ properly

---

[4]In his "Plaintiff's Brief in Support of the Reversal of the Commissioner," Plaintiff alleges that, "arthritis is an affliction of such common occurrence that laboratory findings are unnecessary; the obvious manifestations of arthritis during a physical examination qualify as objective medical facts or clinical findings." (Tr. at 14.) It should be noted that the records do not indicate Mr. Sudduth was ever diagnosed as having arthritis. In fact, the word "arthritis" only appears two times in the records: in the "Disability Report Appeals," where Plaintiff lists Glucosmine as "over the counter medication that is supposed to help with arthritis," (Tr. at 144), and in the "Claimant's Response to Prehearing Order" where counsel for Plaintiff lists "Arthritis" as one of the nonextertional impairments relied on by the Claimant. (Tr. at 150.) No objective medical evidence is provided that supports arthritis being one of Mr. Sudduth's ailments.

questioned the vocational expert based on the functional limitations he found in the record.

The ALJ is only required to base his hypothetical questions on those findings which have support in the record.  Here, the ALJ has done so, and his decision to discredit Mr. Sudduth's testimony was properly supported by substantial evidence.

IV.    Conclusion.

Upon review of the administrative record, and considering all of Mr. Sudduth's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with applicable law.  A separate order will be entered.

Done this <u>2nd</u> day of <u>September 2011</u>.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
167458